**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-2587
_____

JAVOKHIR ATTOEV,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A240-055-794)
Immigration Judge: Richard Bailey
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)

June 30, 2026

Before: SHWARTZ, PHIPPS, and RENDELL, *Circuit Judges*.

(Filed: July 6, 2026)
_____

OPINION[*]
_____

---

[*]This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**RENDELL**, *Circuit Judge*.

Javokhir Attoev ("Petitioner") petitions this Court for review of a Board of Immigration Appeals ("BIA") order reversing the Immigration Judge's ("IJ") decision granting Attoev deferral of removal under the Convention Against Torture ("CAT") and ordering his removal to Uzbekistan. He urges that the BIA applied the incorrect standard of review in reversing the IJ's decision to grant his claim for deferral of removal under CAT. He also argues that the BIA's decision was unsupported by substantial evidence. We will deny the petition.

I.

Petitioner entered the U.S. without authorization. The Department of Homeland Security ("DHS") charged him with removability under 8 U.S.C. § 1182(a)(6)(A)(i). In response, he claimed asylum, statutory withholding of removal, other forms of relief from removal under CAT. To support his claims, he alleged that he had previously been targeted by Uzbek officials based on his religious beliefs as a practicing Muslim and he feared that he would be persecuted or tortured if removed to his home country.

He later explained that while studying in Russia to become an athletics coach, officers arrested him for his purported affiliation with a terrorist organization in Uzbekistan. As authorities attempted to extradite him, Petitioner sought protection from removal in the European Court of Human Rights ("ECHR"). The ECHR ultimately ruled in Petitioner's favor concluding that he would face a "real risk of ill-treatment . . . in the event of [his] removal to [his] countr[y] of origin." AR763-64. Despite this favorable

ruling, he still feared extradition, so he fled from Russia to a series of locations before arriving in the U.S.

During the pendency of his removal proceedings, DHS officers arrested Petitioner on an outstanding international warrant alleging his involvement with a terrorist organization. After his arrest, the Government uncovered evidence of his participation in an identity fraud scheme to produce and distribute false travel documents and evidence of his possession of illicit drugs and a gun. Later, in separate proceedings, the Government charged Petitioner for other crimes.

After a hearing in which Petitioner testified and submitted evidence, the IJ issued a mixed decision denying the application for asylum and withholding of removal but otherwise granting his application for deferral under CAT. In rejecting his claims for asylum and withholding, the IJ concluded that Petitioner "failed to sustain his burden to establish persecution," because his testimony on this point was "inconsistent," "implausible," and riddled with "discrepancies," and therefore, not credible, AR104, 110. Despite his unreliable testimony and the absence of evidence that the Uzbek government fabricated charges against him as pretext to persecute him on religious grounds, the IJ nevertheless granted his claim for deferral. The IJ found that Petitioner "will more than likely be detained upon his arrival" and further concluded that he would, thus, be subjected to torture. AR115.

Both parties appealed. The BIA affirmed the denial of Petitioner's asylum and withholding claims but reversed the grant of deferral. In reversing, it recognized that while the IJ's correctly found that Petitioner was more than likely to be arrested upon

3

removal, the IJ "erroneously conflate[d] the respondent's risk of *arrest* with his risk of *torture*." AR6 (emphasis added). The BIA concluded that while Petitioner submitted generalized evidence establishing the existence of torture in Uzbekistan, this evidence was insufficient to meet Petitioner's "burden of proof" to show that he himself would more likely than not be tortured. AR 5. He petitioned for review.

II.[1]

Petitioner advances two arguments. First, he argues that the BIA "engaged in improper de novo review of the factual findings of the IJ." Pet'r's Br. 1. Second, he argues that "the BIA's decision to reverse the grant of deferral of removal under [CAT] was [un]supported by substantial evidence." *Id.* We reject both.

A.

Contrary to Petitioner's urging, the BIA did not engage in "improper de novo review." Pet'r's Br. 1.

A claimant who is ineligible for withholding of removal under CAT because he is, like Petitioner, a danger to national security, may otherwise be eligible for deferral of removal if he is more likely than not to be tortured upon removal to the target country. 8 C.F.R. § 1208.17(a). The claimant carries the burden of showing his entitlement to such

---

[1] We have jurisdiction to review final orders of removal under 8 U.S.C. § 1252(a)(1). We review legal conclusions de novo. *Toussaint v. Att'y Gen.*, 455 F.3d 409, 413 (3d Cir. 2006). We will not disturb factual findings "if supported by reasonable, substantial, and probative evidence on the record considered as a whole." *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)(quotation marks and citation omitted).

4

relief. 8 C.F.R. § 1208.17(d)(3). To succeed on a claim for deferral under CAT, a claimant must establish "(1) what is likely to happen to [him] if removed; and (2) . . . [that] what is likely to happen amount[s] to the legal definition of torture[.]" *Myrie v. Att'y Gen.*, 855 F.3d 509, 516 (3d Cir. 2017) (quoting *Kaplun v. Att'y Gen.*, 602 F.3d 260, 271 (3d Cir. 2010)). An IJ's determination as to the first of these two prongs is reviewed by the BIA for "clear error." *Id.* An IJ's determination as to the second prong is reviewed de novo because whether harm constitutes "torture" is a legal question. *Id.* Torture in this context means an "extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment." 8 C.F.R. § 208.18(a)(2).

Petitioner urges that the BIA improperly reweighed some, and disregarded other, evidence on which the IJ relied in granting his claim. In so doing, he continues, the BIA conducted an improper de novo review of the facts and "substitut[ed] its own judgment" for that of the IJ's. Pet'r's Br. 15-16. On the contrary, the BIA left the IJ's findings of fact undisturbed. Among other things, the BIA recognized and upheld the IJ's adverse credibility determination and concluded that "[t]he [IJ's] factual finding that the respondent is more likely than not to be detained upon removal to Uzbekistan is not clearly erroneous." AR6. The BIA reviewed the facts found by the IJ and, despite Petitioner's characterizations to the contrary, reversed the IJ not on any factual ground, but on the legal ground that Petitioner had not met his burden of proving a clear probability that he would be tortured.

The BIA acknowledged that Petitioner adduced "[e]vidence of the general possibility of torture" but concluded that this evidence did not establish a clear probability that he would "be targeted for such treatment." AR6. While Petitioner posits that the BIA "disregard[ed]" some evidence that established that he would more likely than not be tortured, namely "the ECHR record," Pet'r's Br. 15, the BIA did not disregard the ECHR decision, but instead, rightly recognized that it supported only the proposition that he might face "ill-treatment," AR6. But "ill-treatment" is not the legal equivalent of "torture as defined by the CAT." AR6. Despite Petitioner's urging, the ECHR decision did not constitute "independent, probative evidence in support of [Petitioner's] risk of *torture*," but instead, constitutes evidence to support that Petitioner faced a risk of *ill-treatment*. Pet'r's Br. 19 (emphasis added).

Petitioner also urges that the BIA incorrectly faulted the IJ's analysis, which rested on "a relatively small number of anecdotal incidents," to conclude that torture was so widespread as to establish that Petitioner would more likely than not be tortured. Pet'r's Br. 16 (quoting AR6) (internal quotation marks omitted). Indeed, much of the evidence that Petitioner adduced showed, as a general matter, "that the Uzbek government has targeted and detained religious individuals using 'trumped up' criminal charges," AR9, but this evidence did little to advance Petitioner's cause. This is because the IJ found that there was no evidence that "the Uzbek government fabricated charges against" Petitioner as pretext for persecuting him on religious grounds, AR113, and further noted that Petitioner "failed to articulate a[n] . . . explanation as to why the Uzbek[] government is targeting him" beyond his alleged involvement in terrorism, AR112.

6

The BIA was, therefore, correct to conclude that Petitioner failed to meet his burden of proof as to what would more than likely occur upon his removal and that what would occur meets the legal definition of torture.

B.

Next, we reject Petitioner's argument that the BIA's decision was not supported by substantial evidence. The substantial evidence standard requires that we uphold an agency decision "if [it is] supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Elias-Zacarias*, 502 U.S. at 481. We reverse only when "the evidence is such that a reasonable factfinder would be compelled to conclude otherwise." *Chavarria v. Gonzalez*, 446 F.3d 508, 515 (3d Cir. 2006).

Evidence relevant to assessing the probability of torture includes "[e]vidence of past torture inflicted upon the applicant," "[e]vidence of gross, flagrant or mass violations of human rights within the country of removal," and "[o]ther relevant information regarding conditions in the country of removal." 8 CFR § 1208.16(c)(3)(i)-(iv). Generalized statements of torture in a target country are "insufficient to show that harm would more likely than not result" to a particular petitioner. *See Hernandez Garmendia v. Att'y Gen.*, 28 F.4th 476, 484 (3d Cir. 2022). Instead, "[t]he specter of torture must be supported by specific evidence that the individual applicant is more likely than not to be singled out." *Id.* (citing *Denis v. Att'y Gen.*, 633 F.3d 201, 218 (3d Cir. 2011)); *cf. Herrow v. Att'y Gen.*, 93 F.4th 107, 114 (3d Cir. 2024) (recognizing that evidence that more than fifty percent of Somalian minorities were tortured upon removal could support the clear probability of torture).

Here, the IJ found, and the BIA left undisturbed, that Petitioner was not credible. The BIA otherwise concluded that the remaining evidence submitted by Petitioner failed to support the proposition that he would more than likely face harm rising to the level of torture if removed. The BIA's decision to reverse the IJ's grant of deferral was, therefore, supported by substantial evidence because we cannot say that the BIA "overlook[ed] evidence in the record." *Kang v. Att'y Gen.*, 611 F.3d 157, 166 (3d Cir. 2010).

Petitioner contends that the record, however, compels the opposite conclusion reached by the BIA. But not only is the BIA's decision supported by substantial evidence, "[t]he record before us in no way supports a contrary result (i.e., granting CAT protection)." *Hernandez Garmendia*, 28 F.4th at 484. Petitioner claims that the BIA "overlooked the significant country conditions evidence," and other "probative evidence," Pet'r's Br. 19, but, as the Government persuasively notes in its brief, much of the evidence to which Petitioner cites for support is irrelevant because "as the Board explained, the IJ disbelieved Attoev's claim that Uzbek authorities were targeting him for . . . his religio[us] beliefs." Gov't's Br. 15.

Beyond the ECHR decision and "anecdotal reports" we addressed in Section II.A., above, Petitioner cites primarily to two sources of evidence that purportedly compel reversal: the U.S. Commission on International Religious Freedom Report ("Commission Report") and U.S. State Department Human Rights Reports ("State Department Reports").

8

First, Petitioner claims that the Commission Report shows that "the 'vast majority' of individuals profiled reported torture and ill-treatment," Pet'r's Br. 21, but the report standing alone or even read in tandem with the other evidence would not "compel[]" a reasonable factfinder to grant Petitioner's claim. *Chavarria*, 446 F.3d at 515. The report itself notes that "the quantitative and statistical conclusions presented here regarding the numbers of political and religious prisoners . . . are by no means definitive." AR 619. And while the majority of the eighty-one persons profiled for the report made credible allegations of ill-treatment, less than half alleged torture. Rather than supporting reversal, the Commission Report, thus, supports the BIA's conclusion that while Petitioner established the existence of torture in Uzbekistan, Petitioner had not established a clear probability that he would be subject to treatment rising to the level of torture.

The State Department Reports likewise do not compel reversal. One report notes that both "torture and ill-treatment" are "routinely committed" but the relative frequency of torture as opposed to "ill-treatment" is unexplained. *See* AR 703-04 (discussing allegations of torture in connection with "several criminal trials"). Another report also noted that "torture in pretrial detention remained commonplace and *could* have increased." AR 500-01 (emphasis added). The record thus does not compel the opposite conclusion reached by the BIA, which is supported by substantial evidence.

IV.

For these reasons, we will deny the petition for review.

9